# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  **v.**                                       **Case No. 06-CR-336**

**LEONARDO URBINA**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Leonardo Urbina pleaded guilty to conspiracy to distribute 500 grams or more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and I set the case for sentencing. In imposing sentence, I first calculate and consider the sentence recommended by the advisory sentencing guidelines. Then, to ascertain the actual sentence, I apply the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of the defendant's particular case. E.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

Defendant's pre-sentence report ("PSR") set a base offense level of 26, U.S.S.G. § 2D1.1(c)(7), then subtracted 2 levels under the safety valve provision, § 2D1.1(b)(11), and 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 21. Coupled with his criminal history category of I, the PSR recommended an imprisonment range of 37 to 46 months. I found these calculations correct and adopted them without objection.

Defendant then requested a sentence of time-served (about six months) or, in the alternative, a prison term of 12 months and 1 day, under § 3553(a). The government recommended a sentence of 40 months. Upon consideration of the arguments of counsel, I imposed a sentence of 21 months imprisonment. This memorandum sets forth the reasons.

## I.  SECTION 3553(a) FACTORS

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The district court must give respectful consideration to the guidelines in making this determination, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007).  Rather, it is the statute's "parsimony provision" which represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

2

## II.  DISCUSSION

**A.    Nature of Offense**

This prosecution arose out of a government investigation of a large-scale cocaine distribution organization in the Waukesha, Wisconsin area.  As part of that investigation, the government arranged for a confidential informant to make several controlled buys from defendant and his brother-in-law, Federico Meza, between October 2005 to March 2006.  The government also learned, pursuant to a Title-III wire-tap, that defendant purchased 1 ounce quantities of cocaine from a man named Gabriel Urbina.  The government subsequently intercepted eighteen drug-related calls between defendant and Gabriel Urbina.  Based on the controlled buys, defendant was personally involved in the distribution of at least six ounces, or about 170 grams, and the parties agreed that he should be held accountable for a total of between 500 grams and 2 kilograms of cocaine overall.

Defendant stated that he got involved in drug dealing when a man contacted him about obtaining cocaine, and he saw an opportunity to make some fast money through his brother-in-law Meza, a cocaine dealer.  He indicated that he recognized the harm cocaine causes the community and expressed remorse for his actions.  During his allocution, he stated that he was glad he got caught.

**B.    Character of Defendant**

Defendant was thirty-two years old, and his only prior contact was a drunk driving case from 1998.  Defendant was born in Chicago, but he spent most of his childhood in Mexico.  He returned to this country at age sixteen and compiled a solid employment record, as set forth in ¶¶ 129-132 of the PSR.  He married in 2001, and he and his wife had three children, ages

3

four, three and two. By all accounts, he appeared to be a devoted family man. The court also received a letter from a family friend attesting to his helpful nature.

Defendant admitted some past drug use, but he appeared to have no current substance abuse problems. All twenty-nine screens on pre-trial release were negative, and he complied with the other conditions of release.

## C. Guidelines and Purposes of Sentencing

The guidelines recommended 37-46 months in prison. While I agreed that a period of imprisonment was necessary in this case, I found a sentence below the range sufficient to satisfy the purposes of sentencing.

Defendant's involvement in this offense stemmed primarily from his contacts with family members already involved in cocaine trafficking. He was not an entrenched dealer himself. When approached by a potential customer, he was able to contact Meza and obtain cocaine. The amounts defendant personally handled were modest: the largest controlled buy involved 2 ounces, and his purchases from Gabriel Urbina were in the 1 ounce range. The record also contained no evidence that he profited all that much; it appeared that he turned most of the proceeds over to Meza. The PSR supported this characterization, as agents saw defendant meet with Meza prior to or after the controlled buys. For example, the PSR in ¶ 58 indicated that after the October 13, 2005 buy, defendant went to Meza's house to pay Meza for the cocaine. Similarly, after the October 20, 2005 buy, agents observed defendant drive to Meza's home. In ¶ 61, the PSR indicated that agents saw defendant drive to Meza's house, apparently to pick up cocaine, just before the November 21, 2005 controlled buy. Finally, the PSR in ¶ 63 indicated that Meza was involved in the March 24, 2006 buy. These facts supported defendant's contention that his involvement in drug trafficking stemmed largely from his family

contacts, particularly with Meza, whom I recently sentenced to 5 years, rather than his own initiative to become a drug dealer. There was also no evidence of any violence, weapon possession or threats associated with this offense. Therefore, I found a below-range sentence sufficient to provide just punishment.

Further, given his minimal record and expression of remorse, I found a below range sentence sufficient to protect the public and deter defendant from re-offending. Defendant had never been to prison before;[1] therefore, even a below guideline prison sentence was significant to him. I also took into account defendant's good performance on pre-trial release, as well as the evidence that he had primarily behaved in a pro-social manner, worked and provided for his family. He had support in the community and every reason to abide by the law once released – most importantly, his young children.

As noted above, defendant requested a sentence of time served or, failing that, a year and a day. I agreed with the government that such a sentence would be insufficient for someone involved in cocaine trafficking at defendant's level.

Under all the circumstances, I found a sentence of 21 months sufficient but not greater than necessary for this first-time, non-violent offender. This sentence accounted for the positives discussed above, while also acknowledging that the safety valve and acceptance of responsibility reductions partially did so. This sentence also provided sufficient punishment and deterrence for a defendant who appeared to occupy a not insignificant role in this conspiracy. The sentence varied only modestly from the guidelines, and because it was based on the specific facts discussed it created no unwarranted disparity.

---

[1] Defendant served one day in jail for the 1998 drunk driving conviction.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 21 months. Upon release, I ordered him to serve three years of supervised release, with a drug testing and treatment condition and a requirement that he repay the "buy money" expended in this investigation. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

6

Case 2:06-cr-00336-LA   Filed 09/22/08   Page 6 of 6   Document 528